# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **DOUGLAS M. McKENZIE,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No. C2:  04-CV-999** |
| **v.** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **ADVANCE STORES CO., INC., et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## <u>OPINION AND ORDER</u>

## I.  INTRODUCTION

This matter comes before this Court on the following motions: (1) Motion for Summary Judgment filed by Defendants Advance Store Co., Inc., Welfare Benefits Plan of Advance Stores, Co., Inc., Employee Term Life Basic and Optional, Accidental Death and Dismemberment Basic and Optional and Dependent Term Life Benefits for Employees of Advance Stores, Co., Inc., Advance Auto Parts Welfare Benefits Plan (collectively "Advance"); (2) Motion for Summary Judgment filed by Defendant Metropolitan Life Insurance Co. ("MetLife"); (3) Motion for Summary Judgment filed by Plaintiff Douglas McKenzie ("Plaintiff"); and (4) Plaintiff's Motion to Strike Certification of Business Records and Declaration.  For the reasons set forth herein, this Court **GRANTS** Defendants Advance's and Metlife's (collectively, "Defendants") Summary Judgment Motions and **DENIES** Plaintiff's Motion to Strike and Motion for Summary Judgment.

## II. BACKGROUND

**A. Facts**[1]

Plaintiff seeks dependent life insurance benefits allegedly due under an employee welfare benefit plan (hereinafter, the "Plan") sponsored by his former employer Advance, the Plan Administrator and Plan fiduciary, pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* From July 1, 1999 until April 1, 2002, the benefits payable under the Plan were insured by the Prudential Insurance Company of America ("Prudential"). Effective April 1, 2002, MetLife replaced Prudential as the Plan insurer.

Plaintiff was initially hired by Advance on February 22, 2002.[2] At such time, Plaintiff's wife Gloria McKenzie ("Mrs. McKenzie"), was already a full-time employee of Advance. Upon hiring Plaintiff, Advance showed him a list of employee insurance benefits and their respective costs. One of the benefits on this list was dependent life insurance coverage. This was the only information concerning Advance's Plan that Plaintiff was shown or given after he was hired by Advance. There was a document in existence at that time, entitled "Your Group Benefits," which summarized the terms, conditions, and provisions of the Plan as it was established and maintained July 1, 1999. This document, which identified Prudential as the Plan insurer, was never given or provided to Plaintiff after his employment. Mrs. McKenzie had previously been given a document by Advance entitled "Advance Auto Parts 2002 Open Enrollment For

---

[1]    The facts are taken, in large part, from the Stipulation of Facts and Exhibits filed by the parties on October 2, 2006. Doc. 64.

[2]    Plaintiff was terminated on April 29, 2002 and rehired on a part-time basis on June 17, 2002. On January 1, 2003, he was reclassified to full-time status. On June 4, 2003, he was granted a medial leave of absence and was administratively terminated on November 29, 2003, having exhausted his twelve weeks of medial leave. The parties agree that Plaintiff was at all times qualified by his employment status for all benefits for which he applied.

Employee Benefits" ("Open Enrollment Book").  Plaintiff was aware of, and had seen, Mrs.

McKenzie's copy of the Open Enrollment Book.

During employment orientation, Plaintiff filled out a benefit enrollment form in which he

elected Dependent Life Insurance, including Accidental Death or Dismemberment ("AD&D")

insurance coverage for his two children, Joseph and Katie, who lived with Plaintiff and Mrs.

McKenzie.  This enrollment form was completed on Plaintiff's behalf by an employee of

Advance who worked in the human resources office, and it was signed by Plaintiff on July 22,

2002.  Plaintiff then gave it to another Advance employee, Sandy Murphy ("Murphy"), in the

human resources office at Advance in Delaware, Ohio.

At the time Plaintiff enrolled for the coverage, Dependent Life and AD&D coverage for

Joseph was already in place because Mrs. McKenzie had enrolled in the coverage on December

3, 2000, effective January 1, 2001.  Prior to choosing the dependent life insurance, Plaintiff was

aware that his wife had previously elected the coverage for Joseph.  Plaintiff was never told by

anyone, nor was he provided with any document stating, that he and his wife could not both

enroll for and collect dependent life insurance for the death of the same child.  Conversely,

Plaintiff was told by Murphy, who was aware that Plaintiff's wife was also employed at

Advance, that the dependent life insurance coverage was available to him.  After Plaintiff elected

dependent life benefit coverage, Advance regularly deducted a premium for the dependant

coverage from Plaintiff's paychecks.  Premiums were also deducted from his wife's paychecks.

The Dependant Life and AD&D coverage that Plaintiff elected, if found to be in effect,

entitled Plaintiff to receive a $10,000 death benefit plus an additional $10,000 AD&D benefit,

for a total of $20,000, in the event of the accidental death of either of his children.  Plaintiff's son

Joseph died on November 1, 2002, as a result of injuries he suffered in an automobile accident. Following Joseph's death, Mrs. McKenzie submitted a claim to Advance for payment of Joseph's Dependent Life and AD&D benefits.  On November 14, 2002, Advance submitted the claim to MetLife for payment, and her claim was duly processed and paid by MetLife.  Plaintiff submitted a similar claim, which Advance denied.  Advance sent a letter and benefit Plan documents to Mrs. McKenize and/or Plaintiff explaining that Plaintiff's claim had been denied because the Plan did not allow coverage for a dependant child by more than one Plan participant. Advance issued a refund for all premiums paid by Plaintiff for defendant insurance coverage.

Prior to Joseph's death, Plaintiff was not given any document describing the Plan benefits available to him as an Advance employee, except for the document showing the list of benefits and their costs and the benefit enrollment form Plaintiff filled out in which he elected coverage for his two children.  Neither Advance nor MetLife disclosed to Plaintiff in writing or verbally that only one plan enrollee could claim dependent life insurance for the death of an insured dependent.  The  "Your Group Benefits" document that described Advance's Plan as of July 1, 1999, did include such coverage limitation, but the document was never provided to Plaintiff nor to any Advance employee after Plaintiff was employed at Advance on February 22, 2002. MetLife issued a group policy to Advance insuring the benefits payable under the Plan, effective April 1, 2002, and MetLIfe provided a Certificate of Insurance to Advance which contained the terms and conditions of MetLife's group policy, including the duplicate-coverage limitation. These documents, however, were not provided to Plaintiff nor to any Advance employee after commencement of Plaintiff's employment and prior to the death of his son on November 1,

2002. Advance prepared a new summary plan description and distributed to Plan participants in January 2003, after the death of Plaintiff's son.

In sum, the following documents – to which the parties' refer throughout their arguments – are relevant to Plaintiff's claims, Defendants' obligations, and this Court's analysis below:

1. The list of employee benefits and costs shown to Plaintiff upon his employment, (hereinafter, "Benefit List").

2. The benefit enrollment form completed on Plaintiff's behalf, and signed by Plaintiff, in which Plaintiff selected the life insurance coverage for his children (hereinafter, "Benefit Enrollment Form").

3. A booklet entitled "Advance Auto Parts 2002 Open Enrollment For Employee Benefits" which Plaintiff's wife had received before Plaintiff's employment and which Plaintiff saw at some point before Joseph's death (hereinafter, "Open Enrollment Book").

4. A booklet entitled "Your Group Benefits," Advance's summary plan description as established and maintained July 1, 1999 (hereinafter "1999 SPD").

5. MetLife's Group Policy document, signed November 7, 2002 with an effective date of April 1, 2002 (hereinafter, "MetLife Group Policy").

6. A document entitled "Your Team Member Benefit Plan" which certified MetLife's coverage and contained the terms and conditions of MetLife's group policy (hereinafter, "MetLife Certificate").

7. A document entitled "Advance Auto Parts Life Insurance Program, Summary of Benefits," Advance's summary plan description with an effective date of July 1, 2002, but not distributed to employees until January 2003 (hereinafter "2003 SPD").

8. A document entitled "Welfare Benefits Plan of Advance Stores" with an effective date of January 1, 1994, which provided the details of Advances employee benefits plan (hereinafter, "Benefits Plan").

### B.  Procedural History

Plaintiff filed a complaint against Defendants on October 15, 2004 pursuant to ERISA. Plaintiff claims that because: (1) Advance agents represented to Plaintiff that he was entitled to dependent life insurance coverage independent of and in addition to the similar coverage provided to his wife; and (2) Defendants processed Plaintiff's enrollment and accepted premium payments from him in the form of payroll deductions, Defendants wrongfully denied Plaintiff's entitlement to the coverage after his son's death on November 1, 2002.  On January 18, 2005 Defendants moved to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  This Court denied Defendants' Motion due to the factual dispute over which documents operated as Defendants' Plan documents at the time of Plaintiff's loss, and allowed the case to proceed to discovery.

On November 2, 2006, Advance, MetLife, and Plaintiff each filed separate Motions for Summary Judgement.  The parties also submitted, collectively, a stipulation of facts and exhibits. In addition, Plaintiff filed a Motion to Strike Certification of Business Records and Declaration previously submitted by Defendants.  All motions have been fully briefed and this Court heard oral arguments from both parties on April 4, 2007.  Accordingly, the motions are now ripe for this Court's review.

### III. STANDARD OF REVIEW

### A.  Summary Judgment

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c).  "[S]ummary judgment will not lie if the dispute is about a material

fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict

for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that

summary judgment is appropriate when the evidence could not lead the trier of fact to find for

the non-moving party).

The standard of review for cross-motions of summary judgment does not differ from the

standard applied when a motion is filed by only one party to the litigation.  *Taft Broad. Co. v.*

*U.S.*, 929 F.2d 240, 248 (6th Cir. 1991).  "The fact that both parties have moved for summary

judgment does not mean that the court must grant judgment as a matter of law for one side or the

other; summary judgment in favor of either party is not proper if disputes remain as to material

facts.  Rather, the court must evaluate each party's motion on its own merits. . . ."  *Id.* (citations

omitted).

In evaluating motions for summary judgment, the evidence must be viewed in the light

most favorable to the nonmoving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

In the case of cross-motions, the Court must "tak[e] care in each instance to draw all reasonable

inferences against the party whose motion is under consideration."  *Taft*, 929 F.2d at 248.  The

movant has the burden of establishing that there are no genuine issues of material fact, which

may be accomplished by demonstrating that the non-moving party lacks evidence to support an

essential element of its case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v.*

*Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1388-89 (6th Cir. 1993).  Significantly, in

responding to a motion for summary judgment, however, the non-moving party "may not rest

upon its mere allegations . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P.56(e); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994).

The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.,* 8 F.3d 335, 339-40 (6th Cir. 1993). Furthermore, the mere existence of a scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).

## B. ERISA Review

Plaintiff asserts that this Court should review Defendants' denial of benefits under the *de novo* standard of review, while Defendants argue that this Court should utilize the arbitrary and capricious standard of review. It is stipulated that Plaintiff seeks benefits payable under an employee welfare benefit plan as defined in 29 U.S.C. §1002 (1), and that his claim is governed by ERISA. A denial of benefits under an ERISA plan is typically reviewed under a *de novo* standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Under such circumstances, the deferential arbitrary and capricious standard of review applies. *Id*; s*ee also Perez v. Aetna Life Ins. Co.*, 150 F. 3d 550, 558 (6th Cir. 1998) (en banc); *Morrison v. Marsh & McLennan Cos., Inc*., 2006 U.S. App. Lexis 3231 (6th Cir. 2005) (arbitrary and capricious standard of review applicable to claim for group life insurance benefits).

-8-

In this case, the Benefits Plan grants discretionary authority to Advance, the Plan Administrator, to interpret Plan provisions and determine eligibility for Plan benefits:

Powers and Duties of the Plan Administrator

…The Plan Administrator shall determine any and all questions of fact, resolve all questions of interpretation of the Plan which may arise under any of the provisions of the Plan as to which no other provision for determination is made hereunder, and exercise all other powers and discretion necessary to be exercised under the terms of the Plan which it is herein given or for which no contrary provision is made. *The Plan Administrator shall have full power and discretion to interpret the Plan, to resolve ambiguities, inconsistencies and omissions, to determine the rights and benefits, if any, of any Participant or other applicant in accordance with the provisions of the Plan.* Subject to the provisions of any claims procedure hereunder, including a claims procedure under any Benefit Program, the Plan Administrator's decision with respect to any matter shall be final and binding (subject to the terms and provisions of any contract between the Company and any insurance company or other person providing benefits hereunder) on all parties concerned…

Benefits Plan, § 8.2 (emphasis added).  Based on the language set forth above, this Court must apply the arbitrary and capricious standard of review to Advance's decision to deny plaintiff's claim for dependent life insurance benefits.  The arbitrary and capricious standard "is the least demanding form of judicial review of administrative action" and requires a court to decide "whether the plan administrator's decision was rational in light of the plan's provisions." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003) (citing *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000)).  Moreover, in determining whether a denial of disability benefits was arbitrary and capricious, a court is "required to consider only the facts known to the plan administrator at the time he made his decision."  *McDonald v. Western-Southern Life Ins.*, No. C2-98-414, 2001 WL 1678793, at *8 (S.D. Ohio Dec. 14, 2001) (citing *Yeager v. Reliance Standard Life Ins. Co,.* 88 F.3d 376, 381 (6th Cir. 1996)).

-9-

The arbitrary and capricious standard, however, is not merely a "rubber stamp" for a plan administrator's decision.  *McDonald*, 347 F.3d at 172.  In addition, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'"  *Firestone*, 489 U.S. at 115 (1989) (quoting Restatement (Second) of Trusts sec. 187, Comment d (1959)).  Therefore, this Court will keep in mind Advance's role as both Plan Administrator and employer in deciding whether Advance's interpretation of the Plan provisions was rational under the terms of the Plan.

## IV.  ANALYSIS

Before turning to the substantive motions for summary judgement filed by each party, this Court will address Plaintiff's Motion to Strike.

### A.  Plaintiff's Motion to Strike

Plaintiff moves this Court pursuant to Fed. R. Civ. P. 56 to strike the "Certification of Business Records" attached to Advance's Motion to Dismiss and, in part, the "Declaration of Nancy Thomas" filed with Advance's Motion for Summary Judgment.  Federal Rule of Civil Procedure 56(e) provides that "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Plaintiff objects to the Certification and parts of the Declaration because he claims the statements are vague, not based on personal knowledge, and inappropriately contain legal conclusions.

### 1.  Certification of Business Records of Richard Robbins

In order to authenticate Plan documents, Advance filed a Certification of Business Records signed by the company's custodian of records, Richard Robbins in support of Advance's Motion to Dismiss.  Robbins's Certification stated that the following documents were part of Advances' Plan in effect from April 1, 2002 through April 1, 2003 and were prepared "at or near the time of the occurrence of the events therein and that they were kept and maintained in the ordinary course of business":  (1) 2003 SPD; (2) MetLife Certificate; and (3) MetLife Group Policy.

Plaintiff argues that because the parties have stipulated that the 2003 SPD was not issued until after the death of Plaintiff's son, Robbins's Certification is contrary to admission of Defendants and should be stricken.  Plaintiff's challenge, however, does not relate to the authenticity of the document, but only to its legal significance.  Merely because the document was not distributed to employees until 2003 does not mean that Robbins misidentified the document based on his personal knowledge.  This Court has the ultimate responsibility to decide the legal relevance of such document and it can, if it chooses, consider this document as a summary plan description that was issued after the death of Plaintiff's son.  This Court can reasonably infer that Robbins is not stating a legal conclusion but instead is stating his perception of what documents were effective from April 1, 2002 through April 1, 2003.

Plaintiff also objects to Robbins's Certification of the MetLife Certificate and the MetLife Group Policy.  These documents have already been independently authenticated by the parities' Stipulation of Facts and Exhibits, yet Plaintiff objects to Robbins's statement that the documents were "included in Advance's employee welfare benefits plan in effect from April 1, 2002 through April 1, 2003."  Again, the fact that Robbins states that these documents were

included in the Plan during the relevant time period is not controlling; this Court will make its

own legal determination regarding whether the documents are the controlling Plan documents

that bind Plaintiff and Defendants.  Plaintiff's Motion to Strike the Certification is, therefore,

**DENIED**.

## 2.  Declaration of Nancy Thomas

Plaintiff's challenges to the Declaration of Nancy Thomas are similar to his objections to

the Robbins Certification.  Thomas has served as the Assistant Manager of Advance's Benefits

Department since September, 2000.  As with the Certification, Plaintiff objects to Thomas's

characterization of certain documents as Plan documents and argues that Thomas's statements of

what documents and/or terms were "in effect and available" to Plaintiff are based on hearsay and

legal conclusions.  This Court will review the relevant documents, offered through Thomas's

affidavit and the parties' stipulation, to determine the terms of the Plan and need not rely on

Thomas's declaration.  Plaintiff's Motion to Strike the Declaration is, therefore, **DENIED**.

## B.  Motions for Summary Judgment

The critical issue in this case is whether the provision preventing duplicate coverage for

dependants applies to Plaintiff, where Plaintiff never received the documents containing the

coverage limitation – the 1999 SPD, the MetLife Certification, and the 2003 SPD.  Plaintiff

argues that he is entitled to summary judgment because: (1) at the time of his employment, an

Advance agent represented to him that he could enroll in dependant coverage for his children

even though his wife had similar coverage; (2) he was permitted to enroll in dependant coverage

and premiums for such coverage were deducted from his paycheck; (3) the 1999 SPD, which

contained the coverage limitation, was obsolete at the time of Plaintiff's loss because it

-12-

inaccurately identified Prudential, instead of MetLife, as the coverage insurer; (4) the 2003 SPD is not applicable because is was not distributed until after Plaintiff's loss.  In other words, Plaintiff claims that, at the time of his loss, Advance had *no plan* in place (because the 1999 SPD was void) and, therefore, Defendants are bound by the only information disclosed to Plaintiffs: the representations made to Plaintiff that he could enroll; the Benefit List and the Benefit Enrollment Form, which were given to Plaintiff and which did not include the coverage limitation; the Open Enrollment Book provided to Plaintiff's wife which did not include the coverage limitation; and Advance's acts of deducting premiums from Plaintiff's paychecks.

Conversely, Defendants maintain that they are entitled to summary judgment because: (1) Advance's Plan, including the double-coverage limitation, remained in effect irrespective of the change in insurers; (2) even if agents of Advance represented that Plaintiff was entitled to dependant life insurance coverage, independent of and in addition to the similar coverage provided to his wife, such oral statements cannot modify written plan documents; (3) Plaintiff is not entitled to coverage merely because prior to his son's death he was never provided any Plan document containing the duplicate coverage exclusion or otherwise advised of this policy limitation; and (4) the refund of premiums paid by Plaintiff constitutes full restitution.  Further, MetLife argues that Plaintiff has no claim against MetLife because MetLife's Group Policy expressly excludes duplicate dependant coverage.  In addition, MetLife contends that because it does not serve as the Plan administrator, it had no duty to disclose Plan provisions to employees.

### 1. Plaintiff's Claim Against MetLife

Plaintiff does not have a meritorious claim against MetLife.  The Parties have stipulated that the MetLife Certificate that MetLife issued to Advance contains the terms and conditions of

MetLife's group policy that insured Advance's Plan, effective April 1, 2002. The MetLife
Certificate expressly excludes duplicate coverage: "No person may be covered as a Dependant of
more than one Team Member." MetLife Certificate, at 9. Under ERISA, MetLife had no duty
or obligation to furnish the MetLife Certificate, a summary plan description, or any other Plan
document to Plaintiff; such responsibility rests with the Plan Administrator. 29 U.S.C. 1024(b)
(stating that the *administrator* shall publish and provide plan documents to participants and
beneficiaries). MetLife has already paid the Dependant Life and AD&D benefits payable, at a
result of Joseph's death, under its group policy to Mrs. McKenzie, who was the first enrolled
Advance employee. If Plaintiff is entitled to Plan benefits, the benefits are not covered by
MetLife's group policy of insurance, and Plaintiff must rely on Advance for payment. MetLife's
Motion for Summary Judgment is, therefore, **GRANTED**.

## 2. Terms of Advance's Plan

ERISA requires employee benefits plans to be memorialized in a written instrument.
29 U.S.C. § 1102(a)(1) ("Every employee benefit plan shall be established and maintained
pursuant to a written instrument."); *Sprague v. Gen. Motors*; 133 F.3d 388, 402 (6th Cir. 1998).
ERISA also requires employers to provide their employees with a summary plan description
("SPD"), written in a manner calculated to be understood by the average plan participant, that
reasonably apprises them of their rights and obligations under the employee benefits plan. 29
U.S.C. § 1022(a)[3]; *Sprague*, 133 F.3d at 402. Plan documents and SPDs exclusively govern an

---

[3]     Section 1022(b) of ERISA provides that a SPD shall contain the following
information:
    •     the name and type of administration of the plan;
    •     in the case of a group health plan, whether a health insurance issuer is responsible
          for the financing or administration (including payment of claims) of the plan and

-14-

employer's obligations under ERISA plans. *Sprague*, 133 F.3d at 402 *(citing Moore v. Metro.*

*Life Ins. Co.*, 856 F.2d 488, 492 (2d Cir. 1988)).

In this case, the express terms of both the 1999 SPD and the 2003 SPD unambiguously

provide that no person can be the dependant of more than one Advance employee for purposes of

life insurance benefits. The 1999 SPD states: "A child will not be considered the Qualified

Dependant of more than one Employee. If this would otherwise be the case [and there is no

written agreement between the Employee and Employer to the contrary] the child will be

considered the Qualified Dependent of . . . . the Employee who has the longest continuous

service with the Employer. . . " Because Mrs. McKenzie had the longest continuous service with

Advance and had already enrolled in coverage for Joseph (and received the benefit payment),

Plaintiff was not entitled to a claim under the Plan. In addition, the 2003 SPD states: "If you

and your spouse both work for Advance Auto Parts . . . only one of you can elect coverage for

---

(if so) the name and address of such issuer;
- the name and address of the person designated as agent for the service of legal process, if such person is not the administrator;
- the name and address of the administrator;
- names, titles, and addresses of any trustee or trustees (if they are persons different from the administrator);
- a description of the relevant provisions of any applicable collective bargaining agreement;
- the plan's requirements respecting eligibility for participation and benefits;
- a description of the provisions providing for nonforfeitable pension benefits;
- circumstances which may result in disqualification, ineligibility, or denial or loss of benefits;
- the source of financing of the plan and the identity of any organization through which benefits are provided;
- the date of the end of the plan year and whether the records of the plan are kept on a calendar, policy, or fiscal year basis;
- the procedures to be followed in presenting claims for benefits under the plan

-15-

your eligible dependant children." Thus, Advance's decision to follow the plain meaning of the Plan's language, and deny Plaintiff's claim, is not arbitrary and capricious.

Plaintiff, however, argues that the Court should ignore this express and unambiguous Plan language and find Advance's determination arbitrary and capricious because the 1999 SPD was obsolete at the time of his son's death and the 2003 SPD had not yet been distributed to employees. Therefore, he argues, there was no official SPD in effect, and the only information made available to Plaintiff before his son's death – the Benefit List, the Benefit Enrollment Form, and the Open Enrollment Book[4] – does not expressly state that no person can be a dependant of more than one employee. Plaintiff contends that because these documents conflict with the undisclosed terms of the Plan, they should be binding on Advance. Plaintiff's arguments are not supported by the facts or the law.

Plaintiff claims that the 1999 SPD, which listed Prudential as the Plan insurer, had "expired" on April 1, 2002 when Prudential ended its insurance contract with Advance. While MetLife's insurance coverage was effective April 1, 2002, the MetLife Group Policy was not signed until November 7, 2002. Essentially, Plaintiff claims that as of April 1, 2002, and until the MetLife Group Policy was signed on November 7, 2002 and the new SPD was distributed in 2003, Advance had no Plan that defined its benefit coverage. Plaintiff states that the limitation set forth in the 2003 SPD cannot retroactively apply. Plaintiff, however, confuses the Plan and its terms with the insurance coverage of the Plan benefits.

---

[4]     The Open Enrollment Book was provided to Plaintiff's wife and Plaintiff knew of its existence at some point before his son's death.

A change in Plan insurers does not automatically lead to a change in the Plan itself.  In fact, Advance's 1999 SPD provides, "It is intended that this plan will be continued for an indefinite period of time; however, [Advance] reserves the right to change or terminate the plan or change the insurance carrier, in accordance with the law."  Based on this language, it is clear that the terms of the Plans were effective despite the change in insurers.  Advance intended the terms of the Plan to remain in effect until Advance terminated it; in addition, Advance reserved the right to change the insurance carrier at any point in time.  In this case, Advance did not terminate the Plan, it merely changed the insurance carrier.  *See Nixon v. Life Ins. Co.*, 130 F. Supp. 2d 1279, 1295 (M.D. Ala. 2001) (finding that a change in insurance carrier did not affect plaintiff's obligation to comply with the plan terms because the plan terms were the same under each insurance carrier).

The fact that the 2003 SPD is, in all material respects, the same as the 1999 SPD – including the duplicate coverage limitation – supports the fact that Advance was merely changing insurance carriers, not Plan provisions.  Plaintiff heavily relies on *Bartlett v. Martin Marietta Operations Support Inc.*, 38 F.3d 514, 517 (10th Cir. 1994) in his assertion that the 2003 SPD cannot modify the plan in place at the time of Plaintiff's loss.[5]  This is a correct

---

[5]     The Plaintiff in *Bartlett* sued to recover life insurance benefits from her deceased husband's employer.  While the husband was employed by the defendant, the benefits plan changed.  The defendant gave a presentation to all employees describing the new plan and, while there was no SPD offered at the time of the presentation, the employees were each given a workbook that briefly summarized the new benefits.  The workbook stated that "[a]ll regular full-time employees...are eligible to participate" in the benefits program.  A SPD was not distributed until two months after the plaintiff's husband died.  Plaintiff's claim for life insurance benefits were denied on the basis that because her husband had been on medical leave at the time of his death, he was not an "active employee" – which was a condition of eligibility for life insurance.  The term "active employee" was specified and defined in the SPD, but not in the workbook; the workbook did not include the "active employee" requirement as a condition to of

-17-

statement of law. Plaintiff's reliance, however, is premised on the faulty assumption that there was no plan in effect during his loss and that the limitation set forth in the 2003 SPD could not retroactively apply to Plaintiff. In fact, the limitation in the 2003 SPD is just a reiteration of the limitation in the 1999 SPD, which was in existence at the time of Plaintiff's claim arose, despite the fact that the insurance carrier changed.

Finally, Plaintiff's assertion that there was no Plan in effect at the time of his son's death is inconsistent with the fact that Mrs. McKenzie collected the benefit payments under the very Plan that Plaintiff insists was obsolete. This Court finds that the Plan was in effect at the time of Plaintiff's loss, and that the Plan unambiguously precludes duplicate coverage for dependants.

### 3. <u>Representations Outside of the 1999 SPD</u>

Plaintiff also argues that regardless of what the 1999 SPD states, he should not be bound to those limitations because the only information made available to Plaintiff – the Benefit List, the Benefit Enrollment Form, and the Open Enrollment Book, along with the Advance agent's oral representations that Plaintiff could enroll in the Plan – did not include the duplicate coverage provision. Plaintiff claims that after he signed the Benefits Enrollment Form, he received no further information detailing his dependent life insurance coverage under the Plan,

---

eligibility.

The *Bartlett* court held, however, that the SPD, which was issued after plaintiff's husband signed up for the program, could not retroactively add an eligibility term that was not contained in the only written document available at the time of the employee's death. The Court found that the workbook given to employees constituted the benefit plan for purposes of ERISA because the SPD was not in existence when the claim arose and was not printed or made available to employees. The Court held that the company could not add terms to the only existing written document sometime after the date a participant was entitled to and had elected to receive benefits.

other than viewing the Open Enrollment Book that had previously been giving to his wife.

According to the terms of the Open Enrollment Book, Defendants did not expressly or implicitly

preclude duplicate dependent life insurance coverage.[6]  Plaintiff considers the Enrollment Book

to be Defendants' *actual* SPD basing his belief, in part, on the Legal Disclaimer contained on the

inside back cover of the Open Enrollment Booklet.  The disclaimer states:

> This open enrollment booklet contains a limited summary of certain provisions of the
>
> Advance Auto Parts Health Care Plan (the "Plan").  It is not the Complete Plan or
>
> a complete description of the Plan . . . .

Plaintiff's arguments are not supported by relevant case law.

ERISA regulated plans must be administered "in accordance with the documents . . .

governing the Plan."  29 U.S.C. 1104(a)(1)(D).  In other words, the general rule is that Plan

documents, including SPDs, exclusively govern an employer's obligations.  *Sprague*, 133 F.3d at

402.  Where there is a conflict between the language of an employee benefits plan and an SPD,

the SPD governs.  *Edwards v. State Farm Mut. Ins. Co.*, 851 F.2d 134, at 136 (6th Cir. 1988)

(citing *Rhoton v. Central States, Southeast & Southwest Areas Pension Fund*, 717 F.2d 988, at

989 (6th Cir. 1983)).  In *Edwards*, the Sixth Circuit Court of Appeals held that the terms of an

SPD distributed to plan participants override terms in an inconsistent plan.  The *Edwards* court

reasoned that, "[i]t is of no effect to publish and distribute a plan summary booklet designed to

---

[6]       The section discussing dependant life insurance in the Open Enrollment Book provides, "you may choose to cover dependent children with $10,000 of coverage.  Coverage for dependent children is available for children up to 19 years of age (or 23 years old if full-time student).  One policy covers all eligible dependent children for the same weekly rate of $0.23."

-19-

simplify and explain a voluminous and complex document and then proclaim that any inconsistencies will be governed by the plan." *Edwards*, 851 F.3d at 136.

The Sixth Circuit has repeatedly held, however, that *Edwards* requires more than inconsistency; "rather, the SPD and the plan document must directly conflict." *Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 938 (6th Cir. 1996); *see also Garst v. Wal-Mart Stores, Inc.*, 30 Fed. Appx. 585 (6th Cir. 2002) (stating that reliance on *Edwards* is misplaced where there is nothing to indicate that there is a conflict between the terms of the SPD and those of the underlying plan). The *Sprague* Court specifically stated: [T]he principle announced in *Edwards* does not apply to silence . . . . An omission from the summary plan description does not, by negative implication, alter the terms of the plan itself. The reason is obvious: by definition, a summary will not include every detail of the thing it summarizes." *Sprague* 133 F.3d at 401.

In the case *sub judice*, the documents that Plaintiff received did not amount to an SPD, and in any event, the documents do not pose a direct conflict with the terms of Advance's Plan. As discussed above, Section 1022(b) of ERISA specifies the information that is required to be in an SPD. Unlike the 1999 SPD, which expressly states that it is the summary plan description and provides all of the 1022(b) information, neither the Open Enrollment Book, the Benefit List, nor the Benefit Enrollment Form meet the requirements set forth in the statute, and therefore, were not intended to be such a document. Furthermore, the Open Enrollment Book specifically states that the "contents of this enrollment book pertain to the January 1, 2002 Open Enrollment Only." The Open Enrollment Book was not intended to be a comprehensive summary of employee benefits provided by Advance, and the Legal Disclaimer Plaintiff sites actually disproves, not supports, any allegation that the Open Enrollment Book served as the SPD. Even

-20-

if the Open Enrollment Book was to be considered an SPD, Plaintiff's claim still fails because there is no direct conflict between the Plan and the language in Open Enrollment Book. Under *Sprague*, an admission of a limitation does not set up a direct conflict.

Plaintiff's assertion that Advance should be bound by the oral representations of its agents that Plaintiff could enroll for dependant coverage is also meritless. Clear terms of the written employee benefit plan may not be modified or superseded by oral undertakings on the part of the employer. *Sprague*, 133 F.3d at 402-03. The *Sprague* Court explained that the ERISA writing requirement lends predictability and certainty to employee benefit plans, thereby serving the interest of both employers and employees. "Congress, in passing ERISA, did not intend that participants in employee benefit plans should be left to the uncertainties of oral communications in finding out precisely what rights they were given under the plan." *Id.* (internal citations omitted). Indeed, the *Sprague* Court held that employers may not orally modify their employee benefit plans because "sanction[ing] informal 'plans' or plan 'amendments' – whether oral or written – would leave the law of employee benefits in a state of uncertainty and would create disincentives for employers to offer benefits in the first place. Such a result is not in the interests of employees generally, and it is certainly not compatible with the goals of ERISA." *Id.* Therefore, while this Court disdains misrepresentations made by the human resources office of Advance, Plaintiff may not invoke such oral statements in order to modify the terms of the written plan.

### 4. Failure to Disclose

Underlying Plaintiff's claims is the fact that he was never put on notice of the duplicate coverage limitation because he was never given the 1999 SPD, and the 2003 SPD did not issue

until after Plaintiff's loss.  Although ERISA requires employers to provide their employees with

a SPD, 29 U.S.C. § 1022(a), failure to comply with ERISA's disclosure requirements cannot be

the basis for an award of substantive relief.  *See Lewandowski v. Occidental Chemical Corp*.,

986 F.2d 1006, 1009-10 (6th Cir. 1993) ("nothing in [ERISA's civil enforcement provision]

suggests that a plan beneficiary should receive a benefit award based on a plan administrator's

failure to disclose required information"); *Del Rio v. Toledo Edison Co.*, 130 Fed. Appx. 746,

751, (6th Cir. 2005) (holding that even if the employer defendant failed to provide the SPD to

plaintiff, plaintiff could not recover a substantive remedy under ERISA's statutory scheme).

"ERISA's remedial scheme presents a detailed, reasoned compromise between plan participants'

needs for adequate disclosure and the disincentives expansive liability for nondisclosure might

present to employers considering institution of a retirement plan."  *Lewandowski,* 986 F.2d 1006,

1010.  *See also Callery v. United States Life Ins. Co.*, 392 F.3d 401 (10th Cir. 2004).

In *Callery*, the Court ruled that the plaintiff was not entitled to policy benefits merely

because of her employer's failure to provide her with plan documents setting forth certain plan

limitations prior to the date on which her claim arose.  Specifically, the Plaintiff in *Callery*

sought life insurance benefits after the death of her ex-husband, even though an express

exclusion terminated her right to receive the benefit in the event of a divorce, and she had not

been aware of such exclusion.  The employer in *Callery*, as in this case, mistakenly withheld

premium payment for this coverage even after her divorce.  The *Callery* Court found that her

employer's refund of those premiums constituted full restitution and did not otherwise find that

the payment of those premiums entitled the Plaintiff to coverage against the express provisions

of the undisclosed plan documents.  In this case, upon learning of its mistake, Advance refunded

-22-

to Plaintiff the $3.68 in premiums that were mistakenly withheld from his paycheck.  Therefore, Plaintiff has received full restitution and Plaintiff may not seek a substantive remedy based on the fact that Advance mistakenly deducted premiums or that the SPD was not provided to him during his employment.

In sum, this Court finds that the terms of the 1999 SPD were still in effect at the time of Plaintiff's loss, regardless of the change in the insurance carrier.  In addition, the representations made to Plaintiff, whether expressly through oral statements or impliedly through the deductions of premiums and the documents provided to him, did not alter the terms of Advance's Plan.  Finally, the fact that the 1999 SPD was not disclosed to Plaintiff does not entitle Plaintiff to a substantive remedy.  This Court finds that there is no genuine issue of material fact and that Advance's decision to deny Plaintiff's claim was rational in light of the Plan's provisions.  Advance's Motion for Summary Judgment is, therefore, **GRANTED**, and Plaintiff's Motion for Summary Judgment is **DENIED**.

**V. CONCLUSION**

For the foregoing reasons, Defendants' Motions for Summary Judgment are **GRANTED**

and Plaintiff's Motion to Strike and Motion for Summary Judgment are **DENIED**.

    **IT IS SO ORDERED.**


                **s/Algenon L. Marbley**         

                **ALGENON L. MARBLEY**

                **UNITED STATES DISTRICT JUDGE**

**DATED: May 24, 2007**